UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

WILLIAM R. BARNES,

Debtor.

Case No. 11-27724

Chapter 13

_____

MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO CONFIRMATION
_____

This matter came before the Court on the trustee's objection to confirmation of the debtor's modified plan on the grounds that it improperly shortened the applicable commitment period. The issue presented is whether a debtor, who had above-medium income at the time his chapter 13 petition was filed, may, post-confirmation, reduce the plan duration to a period less than 60 months without also providing for full repayment to unsecured creditors. The trustee and the debtor submitted briefs in support of their respective positions. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the Court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052. For the reasons stated below, the objection to confirmation is overruled in part and sustained in part, without prejudice and subject to further proceedings.

BACKGROUND

William R. Barnes filed his chapter 13 petition on May 13, 2011. Because his income at filing exceeded the applicable median family income, he was required to propose a 60-month plan. His plan, which was confirmed on July 20, 2011, provided that he was to pay $1,285.00 per month for 60 months. The confirmed plan also proposed a 100% repayment to unsecured creditors. The debtor's income started to decrease as his working hours decreased shortly after

the plan was confirmed. On October 14, 2011, the debtor filed a modified plan, reducing his payments to $450.00 bi-weekly, with a projected payment to unsecured creditors of 100%. That modified plan was confirmed on November 10, 2011. His income continued to decrease and the debtor requested, and received, a suspension of payments for two months from September 26, 2013, through November 25, 2013. Because his income continued to fall to the point where he became a below-median income debtor, he filed the current motion to modify the plan on December 6, 2013. The current proposal reduces bi-weekly payments to $150.00 and reduces the total plan period to 38 months, with unsecured creditors receiving less than 100%.

## ARGUMENTS

The trustee argues the requirements for confirmation set forth in 11 U.S.C. § 1325(b) apply to post-confirmation modifications and, therefore, the debtor may not amend his plan to provide for a duration of less than 60 months. *See In re King*, 439 B.R. 129 (Bankr. S.D. Ill. 2010) (finding requirement that above-median income debtors either pay unsecured creditors in full or propose plans of 60 months' duration, was equally applicable to modified plans and prevented debtors from modifying plan postconfirmation to reduce 60-month payment term without paying unsecured claims in full). The debtor has not submitted any evidence that he cannot make payments for a period of 60 months at the reduced level proposed in the modified plan. Had Congress intended the applicable commitment period to have to application to modifications, it could have easily included it in section 1329(a) as one of the items that may be changed in a post-confirmation modification. Additionally, the reference to a maximum duration in section 1329(c) clearly indicates that the applicable commitment period does not change even if the plan is modified.

2

The debtor argues that the plain language of 11 U.S.C. § 1329(a)(2) permits the shortening of the length of a plan and that such a modification is not subject to the requirements of 11 U.S.C. § 1325(b). That section does not limit the extension or reduction of time for payments to only those debtors who were below-median income at the time of filing. Because section 1325(b) is not specifically enumerated in section 1329(b)(1), its requirements are inapplicable to post-confirmation plan modification and, therefore, debtors may shorten the duration of their confirmed plan at any time, regardless of whether unsecured creditors are paid in full. *See, e.g., In re Tibbs*, 478 B.R. 458 (Bankr. S.D. Fla. 2012) (holding above-median income debtors could modify confirmed plan to provide for payment of remaining amounts owing under plan in single payment, with funds contributed by relatives, before applicable commitment period had run and without paying allowed unsecured claims in full).

DISCUSSION

Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, section 1329(c) did not permit a modification to extend payments beyond three years after the first payment under the original plan became due, unless the court, for cause, permitted a longer time not to exceed five years. BAPCPA replaced the three-year period with "applicable commitment period" as the required length of a plan during which the debtor must commit his projected disposable income to the payment of unsecured claims, if the chapter 13 trustee or an unsecured creditor objects to a plan that does not so provide. The applicable commitment period is three years for a below-median income debtor and five years for an above-median income debtor. 11 U.S.C. § 1325(b)(4). This brings us to the question in this case: If an above-median debtor's income decreases below the applicable median income following confirmation, can a

3

modification shorten the original term of the plan to not less than three years?

Recognizing that a debtor's circumstances change over time, the Code permits modification of a plan as follows, in relevant part:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to –
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> (2) extend or reduce the time for such payments;
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
> (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance ....
>
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
>
> (c) A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

11 U.S.C. § 1329.

There is a split of authority as to whether the disposable income test of section 1325(b) applies to a modification under section 1329. Under section 1325(b)(2) disposable income is based on the debtors "current monthly income," defined in section 101(10A) and based on the six month period before filing. It cannot change over time no matter how the debtor's circumstances change after that six month pre-filing period, and this number determines the applicable commitment period under section 1325(b)(4). If the trustee or an unsecured creditor objects, a plan cannot be confirmed unless its term is at least the applicable commitment period, which in

4

this case was five years for this above-median income debtor. Thus, his initial plan was confirmed and was scheduled to complete in five years.

A loss of income intervened after confirmation and before the five years had elapsed, and the debtor turned to modification under section 1329. By its terms, section 1329(b)(1) does not expressly incorporate section 1325(b). Section 1329(a)(2) apparently permits debtors to reduce the duration of their confirmed plan, subject to the requirements of section 1325(a). Section 1325(b) – the "applicable commitment period" requirement – is not listed in the specific sections applicable to a modified plan under section 1329, namely sections 1322(a), 1322(b), 1323(c), and the requirements of 1325(a). Nevertheless, section 1325(a), in turn, provides that "except as provided in subsection (b), the court shall confirm a plan if" the requirements of section 1325(a) are satisfied. The interpretation of this last section is the only requirement now at issue.

Here is where the intricate and delicate dance of statutory interpretation plays out, with courts allowing and not allowing shortening of a plan at modification, all invoking the "plain meaning" of the interplay among the various provisions of chapter 13. Generally, courts holding that shortening the term is not allowed have looked to the language of section 1325(a), a provision that is expressly incorporated into section 1329, which states " [e]xcept as provided in subsection (b), the court shall confirm a plan." 11 U.S.C. § 1325(a). These courts have determined that this language implicitly incorporates the disposable income test of section 1325(b)(1)(B) into the modification provisions of section 1329. *See*, *e.g.*, *In re Heideker*, 455 B.R. 263 (Bankr. M.D. Fla. 2011) (holding requirement that debtors must either pay their unsecured creditors in full or propose plans that extend for entire term of their applicable commitment periods, were equally applicable to modified plans); *In re King*, 439 B.R. 129

5

(Bankr. S.D. Ill. 2010) (finding above-median income debtors were prevented from modifying plan post-confirmation to reduce 60-month payment term without paying unsecured claims in full); *In re Heyward*, 386 B.R. 919 (Bankr. S.D. Ga. 2008) (finding "applicable commitment period" is temporal concept, not a multiplier, so that below-median income debtor did not have ability, by obtaining reverse mortgage on his home, to pay off plan early, less than 36 months into plan, unless payment that he made with funds obtained from reverse mortgage transaction was sufficient to pay unsecured creditors in full). Similarly, at least one court has noted that the requirement in section 1325(a)(1) that a plan "compl[y] with the provisions of this chapter" also supports a finding that section 1325(b) is applicable to section 1329 modifications. *See In re Buck*, 443 B.R. 463, 469 (Bankr. N.D. Ga. 2010) (debtors could reduce plan term, due to loss in income, to period of less than 60 months only if unsecured claims were paid in full).

While concluding that the projected disposable income test applies to a proposed modification and that a modification cannot reduce the applicable commitment period, these courts bolster their interpretation of statutory language with policy reasons as well, even when modification could reduce, or even eliminate, plan payments over the remaining term to an amount the debtor can pay. *E.g.*, *In re Buck*, 443 B.R. 463, 470 (Bankr. N.D. Ga. 2010) ("Even where, as in the case of these Debtors, no funds are available on a monthly basis for payment to the Trustee, Debtors could propose a modified plan with monthly payments of zero dollars to the Trustee."); *In re King*, 439 B.R. 129, 139 (Bankr. S.D. Ill. 2010) ("Admittedly, requiring above-median income debtors to remain in bankruptcy for their entire commitment period – while also allowing them to adjust their plan payments based on changed financial circumstances – may result in situations where certain debtors end up paying very little to the Trustee for

extended periods of time. However, if the Court were to allow above-median income debtors to simply exit bankruptcy upon payment of their secured claims, unsecured creditors would be deprived of the opportunity to capitalize on any subsequent increases in the debtors' income."). The courts adopting this line of reasoning adhere to an unmodifiable temporal view of the applicable commitment period: debtors whose income is above-median at the beginning of a case must remain in a chapter 13 case for the entire period so that, if their ability to pay more to creditors changes, they may be required to do so. This concern was illustrated by the *King* court:

> As a practical matter, it is important to note that a "good faith" standard also could not be monitored once a case is closed. For example if a debtor's confirmed plan required payments of $100.00 per month and the debtor subsequently filed a plan modification to pay the balance of $2,400.00 in month 36, there would be no way to monitor the windfall the debtor received in month 44. The case would be closed, the debtor discharged, and the provisions of 11 U.S.C. § 521(f) would be unenforceable. This scenario confirms the reason why the applicable commitment period is a necessary plan component for modifications.

439 B.R. at 137, n. 7.

I find that the inclusion of section 1325(b) in the requirements for modifying a plan under section 1329(b) is too oblique and tenuous to be what the modification statute is intended to provide. Congress included certain statutory references in section 1329 and left out this one. Dragging in the requirement for unmodifiable duration indirectly, when other requirements are addressed directly, is not appropriate. Furthermore, section 1329(a)(2) states that a modification may "extend or reduce" the time for payments. If reducing the length of the plan cannot be allowed, what could this mean? Congress could easily have added to that subsection, "except as required by 1325(b)," but it did not, even though the drafters were obviously looking at other sections to incorporate as modification requirements. A number of courts have also determined

7

that the disposable income test, as set forth in section 1325(b), does not apply to modified plans under section 1329, but the good faith test is applicable to the determination of whether shortening the term should be allowed. *See*, *e.g.*, *In re Grutsch*, 453 B.R. 420 (Bankr. D. Kan. 2011) (finding projected disposable income requirement is inapplicable, outside plan confirmation context, to modification of previously confirmed plan; shortened plan term not allowed due to lack of good faith); *In re Davis*, 439 B.R. 863 (Bankr. N.D. Ill. 2010) (finding projected disposable income requirement inapplicable to modification of previously confirmed plan; modification proposed in good faith and shortened plan term allowed); *cf. In re Kearney*, 439 B.R. 694 (Bankr. E.D. Wis. 2010) (noting while proposed modification to confirmed plan did not have to satisfy projected disposable income requirement, debtor's projected income and expenses were relevant to whether modification was proposed in good faith).

Even if a debtor can establish a change in circumstances, if he cannot prove that the change inhibits his ability to fund the plan through the end of the original term, courts have determined that a change alone without further evidence is not sufficient to reduce the applicable commitment period. *In re Savage*, 426 B.R. 320, 325 (Bankr. D. Minn. 2010) (finding reduction in child support payments did not warrant modification because debtors did not lose ability to make payments for entire term); *In re Clevenger*, 430 B.R. 539, 543 (Bankr. W.D. Mo. 2009) (noting debtors offered no reason why they could not or should not be required to make payments for 60-month period, and payments could be made to unsecured creditors if plan continued for that period). *See also In re Johnson*, 458 B.R. 745, 749 (B.A.P. 8th Cir. 2011) (noting "when a confirmed plan is modified to reduce payments under 11 U.S.C. § 1329(a) due to a substantial change in financial circumstances, the modification must correlate to the change in

8

circumstances"); *In re Mattson*, 456 B.R. 75, 83 (Bankr. W.D. Wash. 2011), *aff'd*, 468 B.R. 361 (B.A.P. 9th Cir. 2012) ("A debtor's financial circumstances may change in a way that justifies a reduction in plan length;" debtors' plan of increased payment and reduced length not proposed in good faith; debtors still above-median income); *In re McCully*, 398 B.R. 590 (Bankr. N.D. Ohio 2008) (loss of job by one debtor warranted shortening term from 60 to 52 months); *In re White*, 411 B.R. 268 (Bankr. W.D. N.C. 2008) (holding it would be unfair, in light of debtor's loss of home and car, to require continued payments for 60 months); *In re Ewers*, 366 B.R. 139 (Bankr. D. Nev. 2007) (reduction in plan term after debtor's retirement not ruled out, but evidence of good faith required).

Allowing a modification of plan term is also consistent with the Supreme Court's ruling in *Hamilton v. Lanning*, 560 U.S. 505, 130 S.Ct. 2464 (2010), in which a detrimental change in the debtor's circumstances, which was expected to exist beyond the term of a plan, justified deviating from what would otherwise be required to be paid to unsecured creditors as determined by the means test. If rigid application of chapter 13 requirements is not necessary at the initial confirmation stage due to the "forward looking" approach in chapter 13 policy, it follows that considerations in modification of a plan may be forward looking as well.

Another policy concern, expressed by the courts in *Heideker* and *King,* is that if reducing a plan's term is statutorily allowable under section 1329, a debtor could have a plan confirmed with a five year applicable commitment period and "simply turn around and modify their plan to provide for a lesser term." *King*, 439 B.R. at 135. This might be a concern in this circuit as the Seventh Circuit has held that a change in circumstances is not necessary for plan modification, as it is in some districts. *See Matter of Witkowski*, 16 F.3d 739 (7th Cir. 1994). However, unfair

9

manipulation of the Bankruptcy Code has long been grounds for failing the good faith test for confirmation of the initial plan and modification, so the integrity of the system or the court's ability to approve or deny confirmation under individual circumstances is not diminished. *See, e.g., In re Clevenger*, 430 B.R. 539 (Bankr. W.D. Mo. 2009). Similarly, modification to pay off a plan before the end of its term without full payment to unsecured creditors, a concern expressed in *Heideker,* would require modification and an opportunity for creditors to object. *See* 11 U.S.C. § 1325(b)(4)(B). The modification would then be subject to scrutiny for bad faith.

Finally, it is true that a shortened plan means debtors are no longer under the authority of the bankruptcy court, and creditors cannot benefit from a debtor's increase in income or other financial fortunes. No court has a crystal ball that can tell it to wait and see because this debtor can pay more in the future. This is also true for a debtor that starts out below-median in income, pays into a plan for three years, gets a discharge, and wins the lottery in year four. If Congress wanted everyone in chapter 13 to be under the scrutiny of the Bankruptcy Court for five years, it could have done so, but it did not. And it would be particularly burdensome for trustees to have to supervise debtors whose economic fortunes had so deteriorated that they made no payments to creditors – nor trustee compensation – just to finish out their unchangeable applicable commitment period.

CONCLUSION

In summary, the debtor has proposed an amended plan to reduce his payments to $150 biweekly and reduce his plan term to 38 months. The record is clear the debtor's income has decreased, and the trustee does not dispute the need to reduce payments. The trustee's objection is based solely on a legal, not factual, argument regarding shortening the plan. To the extent the

10

proposed plan is *per se* not confirmable, the objection is overruled.  However, the record is silent on why the term needs to be shortened.  *See, e.g., In re Savage*, 426 B.R. 320 (Bankr. D. Minn. 2010).  The debtor is apparently still employed, and there is no record as to why he cannot continue to make payments at the level proposed.  Therefore, further proceedings will be scheduled so the court can determine whether the proposed modification is confirmable.

March 17, 2014

                                              Margaret Dee McGarity
                                              United States Bankruptcy Judge